IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES D. ROBINSON; JOHN M. MARSZALEK;  )
NATALIA E. LaVALLIE;                    )
MATTHEW D. SORENSON;                    )
ILLINOIS STATE RIFLE ASSOCIATION; and   )
SECOND AMENDMENT FOUNDATION, INC.       )
                                        )
          Plaintiffs,                   )
                                        )     No. 1:20 CV 4270
     v.                                 )
                                        )
BRENDAN F. KELLY, in his official capacity as  )
Director of the Illinois State Police; and     )
JAROD INGEBRIGTSEN, in his official capacity as )
Bureau Chief of the Illinois State Police Firearms )
Services Bureau,                        )
                                        )
          Defendants.                   )
_____ )
                                        )
BRUCE DAVIDSON, *et al.*,                )
                                        )
          Plaintiff-Intervenors,        )
                                        )
     v.                                 )
                                        )
BRENDAN F. KELLY, *et al.*,              )
                                        )
          Defendants in Intervention.   )

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, JOHN M. MARSZALEK, ILLINOIS STATE

RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC., by

and through undersigned counsel, and submit their Memorandum of Points and

Authorities in Support of their Motion for Preliminary Injunction.

Dated: December 15, 2020                    Respectfully submitted,

By:         /s/ David G. Sigale
                 David G. Sigale

By:         /s/ Gregory A. Bedell
                 Gregory A. Bedell

By:         /s/ Jacob Huebert
                 Jacob Huebert

Attorneys for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

Gregory A. Bedell (Atty. ID# 6189762)
KNABE & BEDELL
33 North Dearborn Street
10th Floor
Chicago, Illinois 60602
312.977.9119
gbedell@kkbchicago.com

Jacob Huebert (Atty. ID# 6305339)
Martha Astor (*pro hac vice*)
Scharf-Norton Center for Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, Arizona 85004
Telephone: 602.462.5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs*

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………..………... ii

Preliminary Statement …………………………………………………………… 1

I.     Statement of Facts …………………………………………………… 3

     A.     Illinois's FOID card requirement ……………………………… 3

     B.     Illinois's failure to timely issue FOID cards ……………………… 4

     C.     Procedural History ………………………………………………… 5

II.     Summary of Argument ……………………………………………… 6

III.     Preliminary Injunction Standard ……………………………………… 6

IV.     Argument …………………………………………………………… 7

     A.     PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S FAILURE TO COMPLY WITH STATE LAW IN THE PROCESSING OF FOID CARD APPLICATIONS VIOLATES THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS …. 9

          1.     The Defendants Are Violating Plaintiffs' Second Amendment Rights ………………………………….……… 9

          2.     The Defendants Are Violating Plaintiffs' Fourteenth Amendment Due Process Rights ………………………… 12

     B.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF………………… 15

     C.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM CAUSED BY THE DENIAL OF THE FUNDAMENTAL RIGHT OF SELF-DEFENSE TO QUALIFIED FOID APPLICANTS ……………………………………………… 18

     D.     THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF…………………………………………… 19

V.     Conclusion …………………………………………………………… 21

## *TABLE OF AUTHORITIES*

<u>Cases</u>

*Buttitta v. City of Chicago,*
    9 F.3d 1198 (7th Cir. 1993) ................................................................... 13

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ............................................................ 18

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)........................................................... 9, 10, 11, 12, 15

*Duncan v. Louisiana,*
    391 U.S. 145 (1968) .............................                                 13

*Elrod v. Burns,*
    427 U.S. 347 (1976) ...........................................................…….......          18

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ......................................................... *passim*

*Freedman v. Maryland,*
    380 U.S. 51 (1965) ...........................................................……....          14

*Gateway E. Ry. Co. v. Term. R.R. Ass'n.,*
    35 F.3d 1134 (7th Cir. 1994) ............................................................ 18

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ....................................................................... 13

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the
United States of Am., Inc.,*
    549 F.3d 1079 (7th Cir. 2008) ..................................................... 7, 19, 20

*Hudson v. City of Chicago,*
    374 F.3d 554 (7th Cir. 2004) ............................................................. 13

*Joelner v. Wash. Park,*
    378 F.3d 613 (7th Cir. 2004) .............................................................19

*Libertarian Party v. Packard,*
    741 F.2d 981 (7th Cir. 1984) ...............................................................…... 20

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ............................................................................... 13

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) ................................................................. 9, 10, 15

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ............................................................. 11

*Nuxoll v. Indian Prairie School District No. 204,*
    523 F.3d 668 (7th Cir. 2008) ............................................................. 18

*Obergefell v. Hodges,*
    576 U.S. 644 (2015) ............................................................................. 13

*Roland Mach. Co. v. Dresser Indus., Inc.,*
    749 F.2d 380 (7th Cir. 1984) .................................................... 15, 18, 20

*Staub v. City of Baxley,*
    355 U.S. 313 (1958) ............................................................................. 14

*Ty, Inc. v. Jones Group Inc.,*
    237 F.3d 891 (7th Cir. 2001)............................................................... 19

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ................................................................................... 7

Constitutional Provisions

U.S. Const. amend. II ...................................................................... *passim*

U.S. Const. amend. XIV................................................................... *passim*

Statutes, Rules, and Ordinances

430 ILCS 65/2 ................................................................................... 3, 7

430 ILCS 65/5 ..........................................................................1, 3, 7, 14

430 ILCS 65/8 ................................................................................... 3, 5

430 ILCS 65/14 ..................................................................................... 7

<u>Other Authorities</u>

*Illinois Gun Buyers Now Waiting More than 60 Days for FOID Card*,
    CBS Chicago, Mar. 27, 2013 .................................................................. 4

Megan Hickey, *Wait Times Keep Getting Longer for FOID Cards in Illinois*, CBS
    Chicago, Nov. 13, 2020 ........................................................................4

John O. McGinnis, *Gun Rights Delayed Can Be Gun Rights Denied*. University of
    Illinois Law Journal Online, Fall 2020 .......................................... 16, 17

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

For an Illinois resident, the ability to exercise one's Second Amendment rights depends on possessing a state license. The license to possess and purchase a firearm is known as a Firearm Owners Identification ("FOID") card. The law governing the FOID card is codified in the Firearm Owners Identification Card Act (430 ILCS 65/1, *et seq*.). Per Illinois state law, at 430 ILCS 65/5, the application process for a FOID card is required to be completed, and the FOID applicant approved or denied, within 30 days. However, the Illinois State Police's FOID application process has completely broken down and has ground to a near-halt, while the deprivation of rights and frustration of law-abiding Illinois applicants has risen in direct proportion to the ISP's inefficiency.

At present, a process that is required by State law to be completed within 30 days was taking, as of October 13, 2020, an average of 116.35 days. https://www.thecentersquare.com/illinois/lawsuits-stack-up-as-foid-delays-reach-an-average-of-116-days/article_12841ae6-0d8c-11eb-ae40-6f0fc578f4ea.html#:~:text=Illinois%20State%20Police%20say%20the,the%20application%2C%20it's%20154.19%20days. As discussed herein, that delay has actually *increased* between October and the present time.

Though the Illinois State Police has made numerous excuses for the delays, the fact remains that Illinois has conditioned the exercise of a fundamental right on one's obtaining of a license, and then allowed the system for processing and issuing

1

those licenses to break down to crisis levels. That is an ongoing wrong that must be remedied immediately by this Court.

The Plaintiffs to this suit, four Illinois residents who have applied for FOID cards, and two organizations with members who are aggrieved by the Defendants' failures to follow State laws and who have had their rights deprived as a result, seek to correct that injustice. The State's inaction is such a blatant denial of constitutional rights that Plaintiffs' request for a preliminary injunction must be granted.

The Defendants' actions/inactions flatly violate the Plaintiffs' Second Amendment rights to keep and bear arms, well as violating their due process rights under the Fourteenth Amendment. The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are clearly likely to succeed on the merits by the conclusion of this litigation.

The Defendants' failures to comply with state law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of law-abiding persons who reside in Illinois has been, and continues to be, wrongfully denied the right and the full ability to defend themselves from criminal attack. One need only follow the news to know the danger people can face in Illinois, especially in Chicago, which for too many years has experienced violent crime and, currently, months of civil unrest and the unfortunate lawlessness that has accompanied it.

Illinois has no valid interest in completely failing to uphold its obligation to process FOID card applications within the statutory timeframe. Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

## I.   STATEMENT OF FACTS

### A.   Illinois's FOID card requirement

Under Illinois law, an individual must obtain a FOID card before that person may possess any firearm. 430 ILCS 65/2 states, in relevant part:

> Sec. 2. Firearm Owner's Identification Card required; exceptions.
>
> (a)   (1) No person may acquire or possess any firearm … without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police….
>
> (2) No person may acquire or possess firearm ammunition within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police.
>
> …

Illinois law also provides that the ISP must "either approve or deny all [FOID card] applications within 30 days from the date they are received," except for renewal applications, which must be approved or denied within 60 days. 430 ILCS 65/5. The ISP must approve a FOID card application unless a disqualifying factor listed in the FOID Card Act (such as a felony conviction or a specified mental health problem) applies. *See* 430 ILCS 65/8.

### B.    Illinois's failure to timely issue FOID cards

Despite the statutory deadline, the ISP often does *not* approve or deny new FOID card applications within 30 days. For years, the ISP has commonly taken much longer to approve qualified individuals' FOID card applications.

For example, in March 2013, the ISP publicly admitted that applicants were waiting 64 days, on average, to receive a FOID card. *See Illinois Gun Buyers Now Waiting More than 60 Days for FOID Card*, CBS Chicago, Mar. 27, 2013.[1] Others at that time reported waits of 10 to 15 weeks to receive a FOID card. *See id.*

In 2020, violence and looting led to a surge in applications for FOID cards, and the ISP is still failing to issue FOID cards within 30 days as state law requires. In November 2020, the ISP publicly admitted that applicants were waiting an average of *one hundred and twenty-two days* to receive their cards. Megan Hickey, *Wait Times Keep Getting Longer for FOID Cards in Illinois*, CBS Chicago, Nov. 13, 2020.[2]

The individual Plaintiffs in this case are Illinois residents who applied for a FOID card and had not yet received it within the 30-day deadline. Plaintiff John M. Marszalek applied on May 4, 2020, and has still not received his FOID card.[3] *See* Declaration of John M. Marszalek, attached hereto as Exhibit "A." Marszalek is not

---

[1] https://chicago.cbslocal.com/2013/03/27/illinois-gun-buyers-now-waiting-morethan-60-days-for-foid-card/.

[2] https://chicago.cbslocal.com/2020/11/13/cbs-2-investigators-big-backlog-on-getting-foid-cards-to-own-firearms-in-illinois/.

[3] Plaintiff James D. Robinson applied on February 8, 2020, Plaintiff Natalia E. LaVallie applied on April 15, 2020, and Plaintiff Matthew D. Sorenson applied on June 2, 2020. All, not coincidentally, received their FOID card shortly after Plaintiffs filed their Amended Complaint. Robinson's FOID card was activated the day after the Amended Complaint was filed.

prohibited from obtaining a FOID card under the disqualifying factors listed in 430 ILCS 65/8. *Id.*

For a significant amount of time, Plaintiffs ISRA and SAF have received reports from their members and supporters that the state has failed to issue their FOID cards within 30 days as state law requires. *See* Declarations of Richard Pearson and Julianne H. Versnel, attached hereto as Exhibits "B and "C." These include, for example, a 55-year-old Cook County resident, and a member of both ISRA and SAF, who applied for a FOID card in June 2020 and has yet to receive it. *Id.*

### C. Procedural history

On July 20, 2020, the ISRA and SAF filed the initial complaint in this case (Doc. 1) together with four different individual plaintiffs who had been waiting longer than 30 days to receive their FOID cards. That complaint alleged that the Defendants' delays in issuing FOID cards violated the Second Amendment and Due Process Clause rights of the individual plaintiffs and of the organizations' affected members.

After that complaint was filed, Defendants, in an effort to avoid a ruling on the merits, immediately issued FOID cards to the four individual plaintiffs, and filed a motion to dismiss, arguing that the individual plaintiffs' claims were moot, and that the organizational Plaintiffs lacked standing. (Docs. 13, 14.) Plaintiffs then sought (Doc. 29) and received (Doc. 32) leave to file an Amended Complaint (Doc.

40), in which four new individuals have replaced the original individual plaintiffs, bringing the same constitutional claims.

Meanwhile, Plaintiffs-Intervenors Bruce Davidson and Sarah Davidson filed a Verified Complaint in Intervention (Doc. 37) alleging that Defendants have not issued their FOID cards within 30 days, either, and bringing the same constitutional claims as Plaintiffs. Intervenors have filed their own motion for preliminary injunction (Doc. 38) seeking an order directing Defendants to issue them FOID cards.

## II. SUMMARY OF ARGUMENT

Illinois's deficiencies in timely processing FOID applications unquestionably violates the Second Amendment right of armed self-defense, as well as the Fourteenth Amendment right to due process of laws.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm for which there is no adequate remedy at law in the absence of injunctive relief. Granting Plaintiffs relief cannot injure Defendant.  And given the degree to which Illinois's failure threatens the safety of Plaintiffs, the public interest, already favoring the exercise of fundamental rights, is clearly satisfied by immediately enjoining Illinois's unconstitutional practice.

## III. PRELIMINARY INJUNCTION STANDARD

"To win a preliminary injunction, a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction

is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "If the moving party meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell*, 651 F.3d at 694; *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## IV.   ARGUMENT

In Illinois, the ability to exercise one's Second Amendment right to keep and bear arms is conditioned on first obtaining a Firearm Owners Identification ("FOID") card from the Illinois State Police ("ISP"). 430 ILCS 65/2/(a)(1). Without a FOID card, a person may not *possess* a firearm—of any kind—much less purchase one; violation constitutes a Class A misdemeanor, and a repeated offense is a Class 4 felony. 430 ILCS 65/14.

Undoubtedly recognizing the FOID scheme's imposition on constitutional rights, the Illinois legislature required the ISP to either approve or deny an application for a FOID card *within 30 days* of receiving it. 430 ILCS 65/5(a). But despite this statutory command, the ISP commonly does *not* approve qualified residents' applications within 30 days, but instead takes much longer, with residents frequently waiting 90 days or even longer. That has been true for years,

and the problem has only become worse as applications for FOID cards surged in 2020 in response to looting and violence.

The individual Plaintiffs in this lawsuit are Illinois residents who applied for FOID cards, are qualified to obtain FOID cards, and have been waiting/waited longer than 30 days to receive their cards. The organizational Plaintiffs, the Illinois State Rifle Association ("ISRA") and the Second Amendment Foundation, Inc. ("SAF"), have Illinois members who are likewise qualified to receive FOID cards and have been waiting longer than 30 days to receive the FOID cards for which they have applied.

Plaintiffs have no adequate remedy at law, will suffer irreparable harm without an injunction, and are likely to succeed on the merits of their Second Amendment and Due Process Clause claims. Further, an injunction will cause Defendants and the public no cognizable harm.

Plaintiffs therefore seek a preliminary injunction ordering Defendants, the ISP officials responsible for administering the FOID scheme, to immediately issue FOID cards to Marszalek and to ISRA's and SAF's affected members. It must also be noted that just as the FOID card delays are unconstitutional as to the Plaintiffs, so are they as to every similarly-situated individual in Illinois.

A. **PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S FAILURE TO COMPLY WITH STATE LAW IN THE PROCESSING OF FOID CARD APPLICATIONS VIOLATES THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS.**

1. **The Defendants Are Violating Plaintiffs' Second Amendment Rights.**

Plaintiffs are likely to succeed on the merits of their Second Amendment claim because Defendants cannot justify indefinitely and completely depriving individuals of their fundamental constitutional right to keep and bear arms by imposing an indefinite *and illegal* delay on their FOID card applications.

"[T]he Second Amendment secures a pre-existing natural right to keep and bear arms," the "central component" of which "is the right of armed self-defense, most notably in the home." *Ezell*, 651 F.3d at 700-01 (citing *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 599-600 (2008)).

In *Heller*, the Supreme Court struck down the District of Columbia's ban on handgun possession and its requirement that all firearms in a home be kept inoperable. *Id.* at 701. "The Court said these laws were unconstitutional under any standard of scrutiny because the inherent right of self-defense has been central to the Second Amendment right and the District's restrictions extend[ed] to the home, where the need for defense of self, family, and property is most acute." *Ezell*, 651 F.3d at 701 (internal citations omitted). Then, in *McDonald*, the Court concluded that the Fourteenth Amendment's Due Process Clause protects individuals' right to

keep and bear arms against infringements by state and local governments because it is a "fundamental" right. *McDonald*, 561 U.S. at 778.

The Seventh Circuit has since prescribed a two-step analysis that courts must apply in considering a challenge to a state or local firearms law under the Second and Fourteenth Amendments. First, "if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right … then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Ezell*, 651 F.3d at 702-03. Second, if the government cannot make that showing, a court must "inquir[e] into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703. In this analysis, the Court must "evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve." *Id.* "[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.*

"[B]roadly prohibitory laws restricting the Second Amendment right—like the handgun bans at issue in [*Heller* and *McDonald*], which prohibited handgun possession even in the home—are *categorically unconstitutional*." *Id.* (citing *Heller*, 554 U.S. at 628-35; *McDonald*, 561 U.S. at 786-87) (emphasis added). In other cases, a court must "choose an appropriate standard of review from among the heightened standards of scrutiny the Court applies to governmental actions alleged to infringe enumerated constitutional rights." *Ezell*, 651 F.3d at 703.

10

A "severe burden" on the "core Second Amendment right of armed self-defense" requires an "*extremely strong* public-interest justification and a close fit between the government's means and its end." *Id.* at 708 (emphasis added). By contrast, "modest burdens" on this right, such as laws that restrict activities characterized as on "the margins of the Second Amendment right," are "more easily justified." *Id.* Yet in either situation, a court may *never* apply mere rational-basis review. *Id.* at 701 (citing *Heller*, 554 U.S. at 628-29 & n.27); *see also Moore v. Madigan*, 702 F.3d 933, 939-40 (7th Cir. 2012) (Illinois ban on carrying ready-to-use firearms could not "be upheld merely on the ground that it's not irrational").

Here, the restriction on Second Amendment rights that Plaintiffs challenge is *most* severe. Defendants' failure to issue FOID cards within the statutorily-required timeframe *completely and indefinitely* deprives individuals of their core Second Amendment right to keep and bear arms for self-defense in the home—indeed, it does so in direct violation of state law. Therefore, like any blanket ban on firearm ownership, these delays are categorically unconstitutional. *See Ezell*, 651 F.3d at 703.

Defendants' delays in issuing FOID cards fail any form of heightened constitutional scrutiny. Again, the burden on individuals' Second Amendment rights is severe, not marginal. The Defendants' delays do not merely "regulate" the right to keep and bear arms, or impose a "modest" burden on Second Amendment rights. *See id.* at 708. Rather, the delays *entirely* deny individuals their core Second

11

Amendment right to keep and bear arms in their homes for self-defense, and do so in a manner explicitly prohibited by state law.

Naturally, Defendants can have no "public-interest justification," *id.*, for these unlawful delays, given that state law bars Defendants from imposing these delays. The State's failure to provide Defendants with sufficient resources to timely process FOID card applications is no justification; it is simply another way of describing the very constitutional violation at issue here. Moreover, despite its financial difficulties, the State has managed to fund many other agencies and programs that, however important they might be, are not rights guaranteed by the United States Constitution. As the Supreme Court has explained, the Second Amendment "surely elevates *above all other interests* the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added).

Plaintiffs therefore can show not merely "*some* likelihood of success on the merits"—which is all that is necessary to obtain a preliminary injunction*, Ezell*, 651 F.3d at 694 (emphasis added)—but a *great* likelihood of success on their Second Amendment claim.

      2.     The Defendants Are Violating Plaintiffs' Fourteenth Amendment Due Process Rights.

Additionally, the State's deficiencies in timely processing FOID card applications essentially denies due process to virtually all qualified applicants, as they are denied the ability for armed self-defense without any mechanism for relief, which violates the Plaintiff's Fourteenth Amendment due process rights.

12

"Under the Due Process Clause of the Fourteenth Amendment, no State shall 'deprive any person of life, liberty, or property, without due process of law.' The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015) (citing *Duncan v. Louisiana*, 391 U.S. 145, 147-149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968)).

"To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)).

"Due process 'is not a technical conception with a fixed content unrelated to time, place[,] and circumstances[;]' instead, it 'is flexible and calls for such procedural protections as the particular situation demands.'" *Hudson*, 374 F.3d at 559 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted). A court determines the constitutionally required process by balancing three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-guards; and finally, the Government's interest.

*Hudson*, 374 F.3d at 559-560 (quoting *Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997)).

13

The private interest affected by the State's actions is great – Plaintiffs are completely deprived of their Second Amendment rights, and their ability to armed defense of themselves and their families, which would be a severe hardship even if we were not in such troubling times. Further, there is no process or procedure - no piece of mail, phone call, or e-mail - of which they can avail themselves to rectify the situation – short of Court intervention.

On top of the general due process principles described above, there is specific precedent requiring injunctive relief to the Plaintiffs. Whenever the government requires individuals to obtain a license or permit to exercise any constitutionally protected right—especially a fundamental right—due process demands that: (1) the burden of proof be allocated to the state, not the individual; (2) the applicant be informed of a *specific and brief* period within which the government will either grant or deny the license or permit; and (3) the licensing or permitting requirement provide a mechanism for prompt judicial review in the event that a license is erroneously denied. *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

 In enacting the FOID Card Act, the Illinois legislature apparently attempted to satisfy the second of these requirements by requiring the ISP to grant or deny a FOID card application within 30 days of receiving it. 430 ILCS 65/5(a). But the ISP typically disregards this requirement, taking much longer than 30 days to grant or deny FOID card applications.

By failing to grant or deny FOID card applications within a specific and brief period of time, Defendants violate applicants' Fourteenth Amendment right to due process of law.

Plaintiffs therefore can show a likelihood of success on their Due Process Clause claim. That the Plaintiffs are being denied fundamental rights, without any procedure or process at all, is yet another reason why Plaintiffs are entitled to immediate injunctive relief against the State's failure to comply with 430 ILCS 65/5.

B.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Plaintiffs, and the law-abiding members of the organizational Plaintiffs, enjoy a fundamental right to keep and bear arms. *McDonald*, 561 U.S. at 778. "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 554 U.S. at 628. The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Irreparable injury will continue to exist in the absence of an injunction because Plaintiffs "will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (emphasis added).

In *Ezell*, the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held

15

that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . . The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. Infringements of this right cannot be compensated by damages." *Ezell*, 651 F.3d at 699 (citation omitted).

This use of First Amendment analogy for Second Amendment analysis is particularly sound in this case:

> Despite its strong history of preventing prior restraints for publications, the First Amendment does permit the state to create a licensing regime for speech, when that speech creates externalities, like burdening traffic or creating noise, as long as the process is content neutral. But it precludes the waiting time for a license from becoming so long as to substantially burden the right. The analogy to the Second Amendment here is direct. Civil unrest and looting give rise to a spontaneous need for self-protection. The Second Amendment cannot permit licensing to be unreasonably delayed in that context.

John O. McGinnis, *Gun Rights Delayed Can Be Gun Rights Denied*, 304 U. Ill. L.J. Online, 302, 315 (2020). "The delay to get a gun cannot reasonably become longer when the need for self-defense is greater, just as the delay for a permit to protest cannot reasonably be lengthened by its proximity to a breaking news event." *Id.* at 317.

16

Put simply, if the Defendants are not enjoined from their continuing slow-rolling of their obligations as to FOID card applications, literally hundreds of thousands of Illinois residents, including the individual Plaintiffs and the organizational Plaintiffs' members, will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for Illinois residents to defend themselves against violence because of bureaucratic inaction also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack. Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently suffering the irreparable harm of the deprivation of their constitutional rights, and will continue to suffer said irreparable harm every day Defendants' failure to comply with 430 ILCS 65/5 is not enjoined. There is no acceptable excuse for this failure, though the ISP has pleaded poverty and insufficient personnel in the media. *See* ISP Press Release, dated December 9, 2020, attached hereto as Exhibit "D." There is no other constitutional right for which these excuses would even be offered, much less countenanced. *See* McGinnis, *supra*, at 317 ("The cost of processing licenses for demonstrations protected under the First Amendment would never conceivably be held as justification for delay"). If the Defendants cannot administer their own system, such that widespread denials of constitutional rights and threats

17

to public safety are resulting throughout the State, then the State either must comply with the law or change its system. The Plaintiffs are complying with the law, jumping through the procedural hoops and paying the fees, and *still* being injured through no fault of their own. Only a Court's injunction can vindicate the Plaintiffs' rights.

      C.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM CAUSED BY THE DENIAL OF THE FUNDAMENTAL RIGHT OF SELF-DEFENSE TO QUALIFIED FOID APPLICANTS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the possession of a firearm such as a handgun for self-defense. The infringement of constitutional rights is frequently considered to be beyond quantification with money damages. This includes infringements of Second Amendment rights. *See Ezell*, 651 F.3d at 699; *see also, e.g.*, *Roland Mach. Co.*, 749 F.2d at 386; *Gateway E. Ry. Co. v. Term. R.R. Ass'n.*, 35 F.3d 1134, 1140 (7th Cir. 1994).

Seventh Circuit courts have repeatedly recognized that there is no adequate remedy at law for the deprivation of conduct that the Constitution affirmatively protects, and that these types of constitutional deprivations are accordingly irreparable. The Seventh Circuit considers the deprivation of First Amendment rights to be irreparable *per se*, and it has often quoted Justice Brennan's statement in *Elrod* that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *E.g., Nuxoll v. Indian Prairie School District No. 204*, 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting *Elrod*, 427

18

U.S. at 373 (plurality op.)); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *Joelner v. Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). In *Ezell*, the Seventh Circuit recognized that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment. *Id.* at 699. As such, the Seventh Circuit found that "[i]nfringements of this right cannot be compensated by money damages." *Id.* (emphasis added).

No legal remedies will be available to qualified Illinois residents who are unable to exercise their Second Amendment right because their ability to obtain a FOID card has been stymied by the very government that requires them. *See*, *e.g.*, *Ezell*, 651 F.3d 708 (firing range ban unconstitutional infringement of Second Amendment, in relevant part, when municipal government required range training for a gun license while simultaneously banning those same firing ranges within municipal limits). And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Illinois's administrative failures.

    D.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

Once the "threshold" factors have been met, the decision to grant or deny an injunction turns on the balance of equities. *See Ty, Inc. v. Jones Group Inc.*, 237 F.3d at 895. The court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief" in light of the probable merit of the claim, and also considers the injunction's

impact on non-parties (the "public interest"). *See Girl Scouts*, 549 F.3d at 1086. The merits are intrinsic to this analysis because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach.*, 749 F.2d at 387; *accord Girl Scouts*, 549 F.3d at 1086; *see also Libertarian Party v. Packard*, 741 F.2d 981, 985 (7th Cir. 1984).

The Plaintiffs are likely to succeed on the merits of their Second and Fourteenth Amendment claims because no state interest justifies Defendants' delays in issuing FOID cards. Absent relief, they will continue to suffer severe and irreparable injury from the deprivation of their fundamental Second and Fourteenth Amendment rights, if not actual physical harm. *Cf. Ezell*, 651 F.3d at 710-11 (balance of harms favored injunction in light of "strong likelihood" that individuals would be denied "the core Second Amendment right to possess firearms for self-defense" and the "entirely speculative" potential harm to the government). The Defendants are preventing the Plaintiffs and every other FOID applicant in Illinois – each and every day the delays persist - from using the most effective lawful means of defending their lives, homes, and families.

The State has no legitimate interest in filing to act; and the public interest strongly favors the State complying with its own law, and the respecting of fundamental rights, to say nothing of the ability of all qualified law-abiding FOID applicants in Illinois to defend themselves. Defendants, on the other hand, will suffer no cognizable harm from being required to simply *obey state law* and allow

law-abiding citizens to exercise those fundamental constitutional rights. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## V.    CONCLUSION

Plaintiffs respectfully ask this Court to issue a preliminary injunction directing Defendants to immediately issue a FOID card to Plaintiff John M. Marszalek, and to the affected members of Plaintiffs ISRA and SAF.

Dated: December 15, 2020

Respectfully submitted,

By:    /s/ David G. Sigale
David G. Sigale

By:    /s/ Gregory A. Bedell
Gregory A. Bedell

By:    /s/ Jacob Huebert
Jacob Huebert

Attorneys for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

Gregory A. Bedell (Atty. ID# 6189762)
KNABE & BEDELL
33 North Dearborn Street
10th Floor
Chicago, Illinois 60602
312.977.9119
gbedell@kkbchicago.com

Jacob Huebert (Atty. ID# 6305339)
Martha Astor (*pro hac vice*)
Scharf-Norton Center for Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, Arizona 85004
Telephone: 602.462.5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs*