# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN M. MARSZALEK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BRENDAN KELLY, *et al.*, | ) |
| | ) No. 20-cv-4270 |
| Defendants, | ) |
| | ) Hon. Mary M. Rowland |
| | ) |
| BRUCE DAVIDSON, *et al*. | ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| BRENDAN KELLY, *et al.*, | ) |
| | ) |
| Defendants in Intervention. | ) |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………..…1

STANDARD OF REVIEW……………..……………………………………………….…..3

ARGUMENT…………………………………………………………………………………..4

I.   THE RELIEF THE ORGANIZATIONAL PLAINTIFFS SEEK CANNOT BE ISSUED BY THIS COURT.................................................................................................... 4

II.      THE ORGANIZATIONAL PLAINTIFFS LACK STANDING. ....................................... 6

A.  Each Organizational Plaintiff Lacks Standing To Sue On Its Own Behalf............................ 6

B.  Each Organizational Plaintiff Lacks Standing To Sue On Behalf Of Its Members. ............... 8

III.     THE ORGANIZATIONAL PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT DEFENDANTS HAVE VIOLATED THE SECOND AMENDMENT. ........ 9

A.  Restrictions On Who Can Purchase Firearms, Such As Those Imposed By The FOID Card Act, Fall Outside The Scope Of The Second Amendment................................ 10

B.  Even If The FOID Card Act Were Within The Scope Of The Second Amendment, Plaintiffs Have Failed To Show That Delays Beyond Thirty Days To Process An Application Constitute A Second Amendment Violation............................................... 12

IV.    THE ORGANIZATIONAL PLAINTIFFS HAVE NOT STATED A VIABLE FOURTEENTH AMENDMENT CLAIM. ................................................................................. 13

CONCLUSION……………………………………………………………..………………………15

**INTRODUCTION**

To effectively regulate who may legally possess a firearm in Illinois and protect the public safety, the legislature enacted the Firearm Owners Identification Card Act ("FOID Card Act"). 430 ILCS 65/1 *et seq*. An integral part of the FOID Card Act requires that all applicants for a FOID card go through a background check to ensure they are not dangerous to themselves or others or prohibited by law from obtaining a firearm. *Id.* at 65/4, 65/8.1. The FOID Card Act further states that the Illinois State Police ("ISP"), through the Firearms Services Bureau ("FSB") shall approve or deny all FOID card applications within thirty days. *Id.* at 65/5(a).

While Plaintiffs allege that delays in processing FOID card applications beyond 30 days violates the Second and Fourteenth Amendments of the Constitution, their claims fail and should be dismissed. This lawsuit was filed by four individual plaintiffs and the Second Amendment Foundation (SAF) and the Illinois State Rifle Association (ISRA) ("the Organizational Plaintiffs") against Defendants in their official capacities. ECF No. 1. Defendants moved to dismiss, but before briefing had concluded on that motion, the originally named individual Plaintiffs had all received their FOID Cards. *See* ECF No. 14. Plaintiffs then filed an Amended Complaint naming four new individual plaintiffs—James D. Robinson, Natalia E. LaVallie, Matthew D. Sorenson, and John Marszalek (the only individual plaintiff still in this case)—and the same Organizational Plaintiffs and Defendants. ECF No. 40. Plaintiff Marszalek[1] and the Organizational Plaintiffs filed a motion for preliminary injunction and supporting memorandum. ECF Nos. 47-48. The Parties briefed the motion for preliminary injunction and Defendants provided a significant amount of information about the FOID Card application and approval process through a declaration from Captain Gregory

---

[1] Prior to the filing of the motion for preliminary injunction Plaintiffs Robinson, LaVallie, and Sorenson received their FOID cards; these plaintiffs were terminated from the case on June 9, 2021. *See* Docket.

1

Hacker, *see* ECF No. 67-1; the Court also conducted a hearing on the motion. On June 9, 2021, this Court denied Plaintiffs' motion for preliminary injunction. In its well-reasoned opinion, this Court explained that Plaintiffs were unlikely to succeed on the merits of either their Second Amendment or Fourteenth Amendment claims. *See* ECF No. 87. For similar reasons, the claims in Plaintiffs' Amended Complaint fail and should be dismissed. *See id.*

As an initial matter, Plaintiff Marszalek has received his FOID card, and therefore his claim is moot. As for the Organizational Plaintiffs, they seek relief that violates principles of federalism and the Eleventh Amendment. Further, neither Organizational Plaintiff has standing to sue on its own behalf, and while this Court determined that the Organizational Plaintiffs have standing to sue on behalf of its members, Defendants respectfully disagree with that aspect of the Court's opinion.

Even if any Plaintiff, including the Organizational Plaintiffs, had standing, they are unlikely to succeed on the merits of their claims. Plaintiffs allege that Defendants violated their Second Amendment rights because it has taken Defendants more than 30 days to process FOID Card applications**.** Defendants reassert that under *District of Columbia v. Heller*, 554 U.S. 570 (2008), the regulation of firearms possession falls outside of the scope of the Second Amendment, meaning that the FOID Card Act's requirements cannot result in a Second Amendment violation. But as this Court has already held, even if the FOID Card Act were within the scope of the Second Amendment, any delays in processing applications do not violate the Second Amendment because the application process is substantially related to an important governmental objective, namely public safety. This Court also found that Defendants are entitled to deference as to how they have operated due to the COVID-19 pandemic.

As this Court has explained, Plaintiffs have also failed to state a viable Fourteenth Amendment claim because Plaintiffs are afforded adequate procedural due process protections under *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). As such, Plaintiffs' claims should be dismissed.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts lack subject matter jurisdiction when a case becomes moot. *Pakovich v. Verizon LTD Plan*, 653 F. 3d 488, 492 (7th Cir. 2011). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id*. at (h)(3).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content, as "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal* 556 U.S. at 678. If, upon its review, the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

**ARGUMENT**

This Court has already held that the claims of all of the individual Plaintiffs are moot. ECF No. 87 at 6 (holding that Marszalek's claim is moot because, as stated in Defendants' uncontested declaration, he has received his FOID card); *see* Docket (terminating all other individual Plaintiffs). Accordingly, the only remaining claims are those of the Organizational Plaintiffs.

**I. THE RELIEF THE ORGANIZATIONAL PLAINTIFFS SEEK CANNOT BE ISSUED BY THIS COURT.**

Plaintiffs' Amended Complaint requests that this Court enter an order directing Defendants to immediately issue FOID Cards to "the affected members of Plaintiffs ISRA and SAF." ECF No. 40 at Prayer for Relief. This Court should abstain from providing this relief under *Rizzo v. Goode*, 423 U.S. 362 (1976). Under *Rizzo*, the Supreme Court instructed that to obtain injunctive relief on a matter traditionally reserved to the discretion of a state or local government agency, a plaintiff must overcome the steep hurdle set by "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Id*. at 378–79 (quotations omitted). The Seventh Circuit recently reaffirmed the continuing relevance of *Rizzo*, observing that "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1073 (7th Cir. 2018), *quoting Rizzo*, 423 U.S. at 378. In such cases, federal courts are to issue injunctions "sparingly, and only in a clear and plain case." *Rizzo*, 423 U.S. at 378. This strong preference against intrusive injunctive relief is primarily founded on "delicate issues of federal-state relationships" (*id*. at 380 (quotation omitted)), which are premised on "the principles of equity, comity, and federalism." *Id*. at 379 (quotation omitted). Here, Plaintiffs are attempting to micromanage the inner workings of a state agency by seeking an order that would require Defendants to violate the FOID Card Act and issue

4

FOID Cards to at least some individuals who may be ineligible and even dangerous. As this Court noted, Plaintiffs' requested relief "seek[s] a functional elimination of process." ECF No. 87 at 23. Additionally, Plaintiffs' assertion that their FOID Cards must be processed within the thirty days allowed by 430 ILCS 65/5 amounts to an attempt to enforce that state statute in federal court, but any such attempt is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 107 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). *Id.*

Moreover, it is virtually impossible for this Court to grant such wide-sweeping relief. As discussed, the claims of named individual plaintiffs are moot. The Organizational Plaintiffs have only referenced two anonymous members who are allegedly impacted by Defendants' alleged failure to issue FOID Cards within thirty days of their application. ECF No. 40 at 39, 45. It is impossible to know whether these anonymous individuals' claims have become moot since this motion was filed. Instead, Plaintiffs request an order requiring Defendants to issue FOID Cards to an unknown number of individuals without completing the background checks required by the FOID Card Act. However, "[t]he judiciary is not ultimately responsible for determining who may possess a firearm." ECF No. 87 at 24. Plaintiffs' requested relief, which seeks to obtain relief suited to a class action without obtaining, or seeking, class certification, is inappropriate.

Of course, any attempt at class certification would fail because each class member would need to be individually assessed to determine whether they were eligible for a FOID Card, precluding any finding of commonality. *See Money v. Pritzker*, 453 F. Supp. 3d 1103, 1128 (N.D. Ill. Apr. 10, 2020) (noting that in instances where each putative class member comes with a unique situation the "imperative of individualized determinations . . . makes [such a] case inappropriate

5

for class treatment"). Further, if this Court granted Plaintiffs' requested relief, which requires the immediate issuance of FOID Cards to unnamed individuals, it is possible that individuals with felony convictions or other prohibiting factors would be granted FOID Cards in direct violation of the eligibility requirements of the FOID Card Act or possibly federal law.

## II. THE ORGANIZATIONAL PLAINTIFFS LACK STANDING.

Plaintiffs' claims also should be dismissed for lack of standing. "Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury." *Ezell v. City of Chicago*, 641 F.3d 684, 694-95 (7th Cir. 2011). Accordingly, standing exists (1) "when the plaintiff suffers an actual or impending injury;" (2) "the injury is caused by the defendant's acts;" and (3) "a judicial decision in the plaintiff's favor would redress the injury." *Id.* (internal quotations omitted). Under certain circumstances, organizations like the Organizational Plaintiffs can assert standing "either on behalf of [themselves] or on behalf of [their] members." *Milwaukee Police Ass'n*, 708 F.3d at 926. If an organization asserts standing on behalf of its members, which is also known as associational standing, then the organization must allege that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 928 (internal quotations and alterations omitted). Here, neither Organizational Plaintiff has standing in its own right or to sue on behalf of its members.

### A. Each Organizational Plaintiff Lacks Standing To Sue On Its Own Behalf.

Plaintiffs allege that SAF is a non-profit organization whose purpose is to promote the private right to own and possess firearms through education, research, publishing, and legal action. ECF No. 40 at ¶ 19. Similarly, the ISRA is a non-profit organization with more than 26,000

members that serves the purpose of protecting the right to privately own firearms through education, outreach, and litigation. *Id.* at ¶ 15. Because these interests are primarily ideological, they cannot be used to establish standing. *See Planned Parenthood of Wisconsin v. Doyle*, 162 F.3d 463, 465 (7th Cir. 1998) ("A purely ideological interest is not an adequate basis for standing to sue in a federal court"). As the Seventh Circuit has explained, "[a]n abstract interest in a matter never has been considered a sufficient basis for the maintenance of – or the continuation of – litigation in the federal courts." *Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009); *see also Milwaukee Police Ass'n* , 863 F.3d at 639 ("[A]n interest in the underlying law does not equal an injury.").

ISRA further alleges that it operates a firing range in Bonfield, Illinois. ECF No. 40 at ¶ 16. However, ISRA does not allege that it has been prevented from operating its firing range or that any of its members have not utilized the firing range due to FOID Card processing delays. *See id.* Nor does the ISRA allege that any of its members has not used the ISRA firing range, or paid the $600 membership dues, because they did not obtain a FOID Card within thirty days. *See* ECF No. 40.

In short, Plaintiffs' Amended Complaint does not adequately allege an actual or impending injury, as required for standing. ECF No. 87 at 8 ("The mere theoretical possibility that someone would purchase a range pass [if they had a valid FOID card] is not enough to confer standing."). Plaintiffs have failed to allege with any specificity that there is an actual person who would have used the ISRA firing range but did not because of a delayed FOID Card approval. Because ISRA has failed to allege that it has, or will, suffer any harm because of ISP's actions, it cannot establish standing to sue on behalf of itself.

**B. Each Organizational Plaintiff Lacks Standing To Sue On Behalf Of Its Members.**

This Court found that the Organizational Plaintiffs have associational standing. ECF No. 87 at 9. However, Defendants respectfully restate their position that the Organizational Plaintiffs do not meet the requirements to establish associational standing. First, Plaintiffs have not identified a member with standing to sue in his or her own right. *See Disability Rights Wisc. Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 801-02 (7th Cir. 2008). It is undisputed that the individual Plaintiffs' claims are moot. Therefore, the Organizational Plaintiffs must show that their Amended Complaint sufficiently alleges that each Organizational Plaintiff has at least one member who could bring suit. *See Disability Rights Wisconsin, Inc.*, 522 F.3d at 804 (noting that "[b]ecause [an association's] First Amended Complaint does not identify any . . . student with standing to bring suit based on the Board of Supervisors' conduct, [the association] does not satisfy the first element" of associational standing). Here, the Organizational Plaintiffs fail to meet this requirement. The Amended Complaint makes one reference to a 76-year-old man from DuPage County, Illinois who has waited more than thirty days for his FOID card. ECF No. 40 at ¶ 39. The Amended Complaint also refers to the Declaration of Jim Pearson, *id.* at ¶ 45, but this declaration is not attached to the Amended Complaint; instead, it is attached to the Motion for Preliminary Injunction. *See* ECF No. 48-2. Even considering the declaration of Jim Pearson, Plaintiffs have not established that they each have a member with standing to pursue his or her own claim because these unidentified members' alleged claims may be moot and are too speculative to establish associational standing.

Additionally, Plaintiffs have not satisfied the second element of associational standing because they have failed to explain how the interests they seek to protect are germane to the organizations' purposes. *See Milwaukee Police Ass'n*, 708 F.3d at 928. While this Court found that the Organizational Plaintiffs' claims do relate to each organization's purpose, it is Defendants' position that the regulation of firearms does not relate to the organizations' purposes. As this Court

8

noted, Plaintiffs do not challenge the FOID Card Act itself, only the processing delays. ECF No. 87 at 14 ("the plaintiffs here are not challenging the permitting process set up by the Illinois legislature"). The FOID Card system does not prevent individuals from exercising their Second Amendment rights, and the temporary delays caused by the administration of the FOID Card system are not sufficiently related to the Organizational Plaintiffs' purpose to create associational standing. Because the Organizational Plaintiffs have not shown that there is an individual member of their organizations with standing to sue, and that this lawsuit is germane to the organizations' interests, they cannot establish associational standing and their claims should be dismissed.

### III. THE ORGANIZATIONAL PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT DEFENDANTS HAVE VIOLATED THE SECOND AMENDMENT.

Even if any Plaintiff had standing, Plaintiffs are unlikely to succeed on a Second Amendment claim. In *Heller*, the Supreme Court held that the Second Amendment protects the individual right to possess a handgun in the home for self-defense. *Heller*, 554 U.S. at 636. However, *Heller* also clarified that "the right secured by the Second Amendment is not unlimited"; *Heller* did not overrule the right to implement "presumptively lawful regulatory measures" such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27 n.26.

Post-*Heller*, most lower federal courts, including the Seventh Circuit, apply a two-step approach to Second Amendment cases. *Ezell*, 651 F.3d at 701-03. The first inquiry asks whether "the restricted activity is protected by the Second Amendment in the first place." *Id.* at 701. If the relevant law does not regulate activity historically protected by the Second Amendment, the analysis ends and further Second Amendment review is unnecessary. *Id.* at 703. If, however, the challenged law falls under the purview of the Second Amendment, "there must be a second inquiry

9

into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.*

When determining if a law restricts activity that falls within the scope of the Second Amendment, the regulation "need not mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010). A regulation can be considered longstanding and outside of the scope of the Second Amendment even if it extends beyond the restrictions in place when the Second Amendment was ratified. *Skoien*, 614 F.3d 638 at 641.

### A. Restrictions On Who Can Purchase Firearms, Such As Those Imposed By The FOID Card Act, Fall Outside The Scope Of The Second Amendment.

Laws that regulate who can possess firearms fall outside the scope of the Second Amendment. *Heller*, 554 U.S. at 626. Here, Plaintiffs do not challenge the FOID Card Act itself, but the delays in processing applications. ECF No. 87 at 23. Because the FOID Card Act, and the application process, is a regulatory mechanism that Illinois uses to ensure that dangerous individuals—such as felons and the mentally ill—do not possess firearms, Defendants respectfully disagree with the Court's determination that delays in issuing FOID cards implicate the Second Amendment. *See* ECF No. 87 at 13-15.

The FOID Card Act was designed to protect the public by requiring that the State conduct a thorough background check before an individual can legally possess a firearm. *See* 430 ILCS 65/1. These regulations imposed by the FOID Card Act comport with the types of longstanding regulatory traditions that fall outside of the scope of the Second Amendment as they are designed to prohibit "the possession of firearms by felons and the mentally ill" and regulate "the commercial sale of arms." *Heller*, 554 U.S. at 626; *see also Pena v. Lindley*, 898 F.3d 969, 1009 n.19 (9th Cir 2018) (Bybee J., concurring in part and dissenting in part) (finding that background checks and

10

waiting periods regulate who may lawfully possess or purchase a firearm and qualify as restrictions on possession of firearms by felons and the mentally ill).

Laws that require individuals to undergo a background check and obtain a permit before purchasing a firearm have been in place for over a century. *See, e.g.,* 1911 N.Y. Laws 195, at 442 § 1984 (requiring permit for purchase of firearm); 1918 Mont. Laws 2, at 6 § 3 (imposing requirement that applicant for a firearm permit has good moral character); 1921 Mo. Laws at 691 § 2 (requiring a showing of good moral character and that issuing a firearm permit will not endanger the public safety). Moreover, 22 states and the District of Columbia require a background check prior to purchasing a firearm.[2] "Since even before the Revolution, gun use and gun control have been inextricably intertwined," and "gun safety regulation was commonplace in the colonies," including "laws disarming certain groups and restricting sales to certain groups." *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 187 (5th Cir. 2012) (internal citations omitted). As shown by the longstanding history of requiring background checks and permits to purchase firearms, the regulatory requirements of the FOID Card Act itself are "presumptively lawful." *See Heller*, 554 U.S at 626-27 & n.26. Therefore, the FOID Card Act does not regulate conduct within the scope of the Second Amendment, instead it promotes public safety through its requirements and application process.

---

[2] *See* Cal. Penal Code §§ 28100–28490; Colo. Rev. Stat. § 18-12-112; Conn. Gen. Stat. §§ 29- 33(c), 29-36l(f), 29-37a(e)-(j); Del. Code tit. 11, § 1448B, tit. 24, § 904A; D.C. Code Ann. §§ 7- 2502.01–7-2502.04; Haw. Rev. Stat. Ann. §§ 134-2, 134-13; 430 Ill. Comp. Stat. 65/1–65/15a, 720 Ill. Comp. Stat. 5/24-3(k); Iowa Code § 724.17; Md. Code Ann., Pub. Safety § 5-117.1(f); Mass. Gen. Laws ch. 140, §§ 121, 129B, 129C, 131, 131A, 131E; Mich. Comp. Laws §§ 28.422, 28.422a; Neb. Rev. Stat. Ann. §§ 69-2404, 69-2407, 69-2409; Nev. Rev. Stat. §§ 202.2547– 202.2548; N.J. Stat. Ann. § 2C:58-3; N.M Stat. Ann. § 30-7-7.1; N.Y. Gen. Bus. Law § 898; Or. Rev. Stat. §§ 166.435, 166.436; N.C. Gen. Stat. §§ 14-402–14-404; 18 Pa. Cons. Stat. § 611; R.I. Gen. Laws §§ 11-47-35–11-47-35.2; Rev. Code Wash. § 9.41.113; Va. Code Ann. § 18.2-308.2:2 (effective July 1, 2021); Vt. Stat. Ann. tit. 13, § 4019.

B. **Even If The FOID Card Act Were Within The Scope Of The Second Amendment, Plaintiffs Have Failed To Show That Delays Beyond Thirty Days To Process An Application Constitute A Second Amendment Violation.**

If a court moves to the second step under *Ezell*, the court looks to how closely the law implicates the Second Amendment to determine the appropriate standard of review. *Ezell*, 651 F.3d 701. As this Court has already noted, "the FOID card delays do not represent a categorical prohibition on certain forms of core Second Amendment activity." ECF No. 87 at 17. Moreover, "[the FOID Card Act's] ultimate goal, preventing high-risk classes of people from obtaining firearms, likely does not implicate the Second Amendment." *Id.* at 18. As such, this Court found that the appropriate level of review to apply to Plaintiffs' claims is some form of intermediate scrutiny. *Id.* at 20. This Court also noted that the burdens caused by the COVID-19 pandemic supported intermediate scrutiny and that courts should "afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic." *Id.* at 17, *citing Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 74 (2020) (Kavanaugh, J., concurring).

Because "[t]he parties agree that the FOID process serves an important government interest—preventing unqualified people from obtaining firearms"—"the analysis is straightforward." *Id* at 20. This Court held that the FOID card application process is "clearly 'substantially related' to the government's interest in preventing unqualified people from possessing firearms." *Id.* at 21. Therefore, any burden the delays have on an applicant's Second Amendment rights "are not so severe as to render the process unconstitutional." *Id.* at 22. Because Defendants' actions have not violated the Second Amendment, Count I of Plaintiffs' Complaint should be dismissed.

## IV. THE ORGANIZATIONAL PLAINTIFFS HAVE NOT STATED A VIABLE FOURTEENTH AMENDMENT CLAIM.

Finally, Plaintiffs' procedural due process claim (Count II) should be dismissed. Plaintiffs allege that Defendants' failure to process FOID cards within the thirty-day time period contained in the FOID Card Act amounts to a violation of their procedural due process rights under the Fourteenth Amendment. ECF No. 40 at Count II. But as this Court has already found, Plaintiffs do not have a viable due process claim. ECF No. 87 at 22-24.

Due process requires notice and the opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). It is well established that due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine the amount of process required, the courts consider: (1) "the private interest that will be affected by the official action," (2) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk that the plaintiff will suffer an erroneous deprivation through the procedure used and the probable value of any of additional procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the appeal process established by the FOID Card Act satisfies these requirements.

The FOID Card Act provides appropriate procedural due process to applicants, including the individual plaintiffs had they used the appropriate procedures. While the right at issue is fundamental, the amount of process required to protect that right must weigh the State's cost in providing additional procedural due process. *Mathews*, 424 U.S. at 33. Here, the amount of process required to protect the individual plaintiffs' Second Amendment rights must be weighed against the State's cost in providing additional procedural due process. *Mathews*, 424 U.S. at 333. Here, Plaintiffs have not provided any suggestion as to what process is appropriate outside of their

13

demand that all affected SAF and ISRA members be immediately issued FOID Cards, that all cards be processed within thirty days, and if it is not possible for all cards to be issued within thirty days that Defendants be enjoined from enforcing the FOID Card Act. *See* ECF No. 40 at Prayer for Relief. This is extreme relief that is "a functional elimination of process." ECF No. 87 at 23.

Moreover, as the Court noted, there is no apparent risk of, or allegation of, erroneous deprivation in this case. ECF No. 87 at 23. The application process is tailored to ensure that the FSB accurately and thoroughly reviews each FOID Card application both to prevent ineligible individuals from obtaining firearms and to reduce the risk of any erroneous deprivation. *See* 430 ILCS 65/8 (listing requirements and considerations that are used to determine if an applicant is eligible for a FOID card). The alleged burden on Plaintiffs is significantly outweighed by the burden that Defendants would suffer if they are forced to provide additional procedural safeguards, including administrative cost and the possibility of future FOID Cards being erroneously issued or denied, if FSB if forced to adhere to a strict thirty-day timeline.

Further, Plaintiffs should not be allowed to pursue their due process challenge because they did not take advantage of state procedural processes when a FOID Card application is not acted upon within 30 days. The FOID Card Act provides an appeal process for unprocessed applications. 430 ILCS 65/10. Specifically, the FOID Card Act states that "whenever the Department fails to act on an application within 30 days of its receipt . . . the aggrieved party may appeal to the Director of State Police for a hearing upon such denial." *Id.* Plaintiffs do not allege that any of the previously included named Plaintiffs or any anonymous members of the Organizational Plaintiffs appealed their non-processed application to the Director. *See* ECF Nos. 40. Instead, Plaintiffs proceeded directly to federal court to challenge Defendants' delay in processing applications. *Id.* It is true that Plaintiffs do not generally need to exhaust their administrative remedies before pursuing an

14

action under Section 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (noting that only prisoners must exhaust administrative remedies before filing suit under section 1983). But the validity of Plaintiffs' procedural due process claim is significantly curtailed by the existence of the appeal process provided by the FOID Card Act.

Plaintiffs repeatedly reference the thirty-day processing time frame set forth in the FOID Card Act. However, even if Defendants failed to follow the time frame set forth in the FOID Card Act, violations of state procedural laws and policies do not amount to a federal due process claim. *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) ("[W]e will be clear once more: a plaintiff does not have a federal constitutional right to state-mandated process."); *Miyler v. Vill. of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008). This Court has already held that the *Mathews* factors "suggest that the FOID process is adequate from a due process perspective." ECF No. 87 at 24. Because the Organizational Plaintiffs have not stated a viable due process claim, Count II should be dismissed.

## CONCLUSION

Plaintiffs have not stated viable claims that Defendants' conduct violated the Second or Fourteenth Amendments of the Constitution. The FOID Card Act and application process are sufficiently related to a legitimate government purpose and satisfy due process requirements.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss Plaintiffs' Amended Complaint.

July 9, 2021

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

*/s/ Mary A. Johnston*
Mary A. Johnston
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-3739

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing notice and referenced pleadings was served on all counsel of record via the Court's CM/ECF system on the **9th** day of **July, 2021**.

*/s/ Mary A. Johnston*
MARY A. JOHNSTON