## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

John M. Marszalek, et al.,

Plaintiffs,

v.

Brendan Kelly, et al.,

Defendants.

Case No. 20-cv-4270

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

The State of Illinois requires individuals wishing to possess a firearm or ammunition to undergo an application process with the Illinois State Police. The Illinois State Police reviews each application and grants it so long as an individual is not statutorily disqualified. Plaintiffs, non-profit organizations Second Amendment Foundation and the Illinois State Rifle Association, together with Plaintiff-Intervenors Bruce and Sarah Davidson, claim that the review process takes too long. Specifically, they claim that the Illinois State Police often takes ninety to one hundred twenty days to process applications in contravention of a state statute that requires the Illinois State Police to issue decisions within thirty days.

Plaintiffs and Intervenors claim that these "delays" have violated their Second Amendment rights; Plaintiffs also claim due process violations. They sue Brendan Kelly, the Director of the Illinois State Police, and Jacob Ingebrigsten and Jessica Trame, other officials who work or worked for the Illinois State Police. Defendants have moved to dismiss Plaintiffs' and Intervenors' claims. [94]; [98]. For the reasons

1

explained below, this Courts grants in part and denies in part Defendants' motion to dismiss Plaintiffs' claims, and grants Defendants' motion to dismiss Intervenors' claims.

## I.  Background

### A.  The Illinois FOICA

The Illinois Firearm Owners Identification Card Act makes it illegal for any person to acquire or possess a firearm, stun gun, taser, or firearm ammunition within Illinois without having in his or her possession a Firearm Owner's Identification Card (FOID) issued by the Illinois State Police (ISP).  430 Ill. Comp. Stat. § 65/2(a).  The Act requires the ISP to "either approve or deny all applications" for a FOID "within 30 days from the date they are received," subject to exceptions inapplicable here.  430 Ill. Comp. § 65/5(a).  The ISP must approve a FOID application unless a disqualifying condition under the statute exists; those conditions include, among other things, a prior felony conviction, addiction to narcotics, and possession of an intellectual disability.  430 Ill. Comp. Stat. § 65/8; *see Horsley v. Trame*, 808 F.3d 1126, 1132 (7th Cir. 2015) ("Upon a sufficient showing regarding the applicant's criminal record, lack of dangerousness, and the public interest, the Director [of the ISP] may issue a card.").

### B.  The Allegations

This Court accepts as true the following allegations from Plaintiffs' amended complaint [40] and Intervenors' amended complaint in intervention [91].  *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021).

Plaintiff Illinois State Rifle Association (ISRA) operates a non-profit organization whose purposes include "securing the constitutional right to privately own and possess firearms within Illinois, through education, outreach and litigation." [40] ¶ 15. ISRA offers a firing range in Bonfield, Illinois for its members to use. *Id.* ¶ 16. ISRA alleges it knows of members who have applied for but have not received their FOID cards or have not had their applications denied within thirty days as the Act requires. *Id.* ¶ 17.

Plaintiff Second Amendment Foundation, Inc. (SAF) is also a non-profit organization whose purposes include "education, research, publishing, and legal action focusing on the constitutional right privately to own and possess firearms." *Id.* ¶ 19. Like ISRA, SAF asserts it knows of members whose FOID card adjudications are overdue past the thirty days set forth in the Act. *Id.* ¶ 20.[1]

Defendant Brendan Kelly is ISP's Director. *Id.* ¶ 22. The ISP constitutes a department of Illinois' executive branch and has responsibility for administering the system of considering applications for FOID cards. *Id.* ¶ 23. Defendant Jarod Ingebrigsten serves as the Bureau Chief of the Firearm Services Bureau, a division of ISP. *Id.* ¶ 25. Plaintiffs sue Kelly and Ingebrigsten in their official capacities. *Id.* ¶¶ 24, 26.

Plaintiffs claim that despite the statutory requirement, the ISP often fails to approve or deny new FOID card applications within thirty days. *Id.* ¶ 31. Some

---

[1] Although the complaint originally named as Plaintiffs John Marszalek, James Robinson, Matthew Sorenson, and Natalie LaValli, these individual Plaintiffs' claims have been mooted by their receipt of FOID cards. [87] at 6; [88].

3

applicants wait ten to fifteen weeks to receive their FOID cards. *Id.* ¶ 34. The amended complaint brings two claims under 42 U.S.C. § 1983 for violations of the Second and Fourteenth Amendments; Plaintiffs seek declaratory and injunctive relief.

Intervenors Bruce and Sarah Davidson live in DuPage County and applied for FOID cards on July 20, 2020. [91] ¶¶ 1–2. They name as Defendants Kelly and Jessica Trame, who from July 20, 2020, through December 11, 2020, allegedly occupied the office of Bureau Chief of the ISP Firearms Services Bureau. *Id.* ¶ 3. The ISP eventually belatedly issued FOID cards to the Intervenors (to Sarah on November 12, 2020, and to Bruce on December 11, 2020). *Id.* ¶ 7. Intervenors purport to bring official capacity and individual-capacity claims against Defendants, alleging that Defendants "acted as individuals either to (i) expressly direct ISP employees to neglect FOICA state policy, or (ii) knowingly fail to direct ISP employees to comply with FOICA state policy." *Id.* ¶ 10, 16. Intervenors assert that they suffered mental anguish and emotional distress "on account of their consequent disability fully to exercise their Second Amendment rights." *Id.* ¶ 17.

### C.    Procedural History

This case commenced in July 2020 when ISRA and SAF brought suit, along with former plaintiffs D'Andre Bradley, Tara Moore, and Brett Shelton. [1]. A few months later, in September 2020, the Davidsons filed a motion to intervene, [20], which this Court granted in October 2020, [36]. Shortly after, in November 2020, the Davidsons filed their complaint in intervention and moved for a preliminary

injunction; at the time, they were awaiting their FOID cards. [37]; [38]. The Davidsons later withdrew their motion for preliminary injunction. [52].

In November 2020, Plaintiffs amended their complaint to substitute as new individual plaintiffs James Robinson, Matthew Sorenson, John Marzalek, and Natalie LaVallie. [40]. The next month, Plaintiffs Marszalek, SAF, and ISRA moved for a preliminary injunction on their Second and Fourteenth Amendment claims. [47].

After a hearing, this Court issued an opinion denying Plaintiffs' motion for preliminary injunction. *See* [87]. This Court found that: (1) the ISP granted Marszalek's FOID card, mooting his request for an injunction; (2) ISRA and SAF possessed associational standing; and (3) ISRA and SAF failed to demonstrate the likelihood of success on the merits of their Second and Fourteenth Amendment claims. *Id.* This Court also separately granted Defendants' motion to dismiss the Intervenors' complaint because the Eleventh Amendment barred their request for money damages and the ISP's issuance of their FOID cards mooted their request for injunctive relief. [81]. This Court also found that the Intervenors' complaint failed to adequately allege individual liability claims against Defendants because it did not assert any personal actions or decisions taken by the Defendants, only that Defendants maintained supervisory responsibility for the FOID program. *Id.* at 5. Subsequently, Intervenors amended their complaint. [91].

Defendants move now to dismiss Plaintiffs' second amended complaint [40] and Intervenors' amended complaint [91]. [94]; [98].

## II.   Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all permissible inferences in the pleading party's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Rule 12(b)(1), like Rule 12(b)(6), requires this Court to construe Plaintiffs' complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 382 (7th Cir. 2020); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Courts evaluating Rule 12(b)(1) motions may look beyond the complaint to consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Silha*, 807 F.3d at 173 (noting that a court "may

6

look beyond the pleadings and view any evidence submitted" when reviewing a challenge that there is in fact no subject matter jurisdiction, even if the pleadings are formally sufficient).

## III.    Analysis

Defendants have moved to dismiss both Plaintiffs' and Intervenors' amended complaints. This Court will address the Plaintiffs' claims first, before turning to the Intervenors'.

### A.    Plaintiffs' Claims

ISRA and SAF remain as the sole Plaintiffs, and Defendants move to dismiss their claims pursuant to Rule 12(b)(1) for lack of Article III standing, and under Rule 12(b)(6) for failure to state a claim. [95]. As a jurisdictional matter, the issue of standing comes first in this Court's analysis. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021).

### 1.    Article III Standing

Article III of the Constitution limits federal judicial jurisdiction to the adjudication of "cases" and "controversies." *Cook County v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1), *cert. dismissed sub nom. Mayorkas v. Cook County*, 141 S. Ct. 1292 (2021). To establish a justiciable case or controversy under Article III, the party invoking federal jurisdiction must possess standing to sue. *Cook County*, 962 F.3d at 218. Standing requires (1) an injury in fact (2) caused by the defendants' conduct and (3) redressable by a favorable decision. *Woodring v. Jackson County*, 986 F.3d 979, 984 (7th Cir. 2021). Generally,

organizations like ISRA and SAF "may have standing to sue either on their own behalf or on behalf of their members." *White v. Ill. State Police*, 15 F.4th 801, 807 (7th Cir. 2021).

ISRA maintains that it possesses both types of standing. ISRA argues it has standing to sue on its own behalf because it operates a firing range in Bonfield, Illinois, from which it earns revenue from the fees ISRA members pay for a range membership; ISRA requires holders of a range membership to possess a valid FOID card. [106] at 17. Accordingly, ISRA argues, Defendants' failure to timely process FOID cards deprives it of revenue it would otherwise receive by members purchasing range memberships. *Id.* This Court considered and rejected this argument already, finding that ISRA's speculation that more ISRA members with FOID cards would translate to more revenue remained insufficient to confer standing. [87] at 8. ISRA has not provided this Court any reason to reconsider that ruling. It has not, for example, marshaled any facts indicating that members with delayed FOID card determinations would have actually purchased range memberships. Absent further proffer, ISRA fails to demonstrate that is has suffered a "concrete and particularized injury" sufficient to establish Article III standing to sue on its own behalf. *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 608 (7th Cir. 2020).

On the other hand, both organizations successfully demonstrate associational standing. Associational standing "allows an organization to sue on behalf of its members 'even without a showing of injury to the association itself.'" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021)

8

(quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). To establish associational standing, ISRA and SAF must demonstrate that: (1) at least one of its members possesses standing to sue; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see Shakman v. Clerk of Cook Cty.*, 994 F.3d 832, 840 (7th Cir. 2021). ISRA and SAF satisfy these requirements.

First, to demonstrate that they possess members with standing, the organizations submit the declaration of one of their attorneys, David Sigale. [106-1]. Sigale attests that he receives steady communications from ISRA and SAF members who applied for FOID cards but failed to receive them within thirty days, as required by law. *Id.* ¶ 3. One ISRA member, J.N., submitted his FOID card application and, as of July 11, 2021, has been waiting for its adjudication. *Id.* ¶ 4. Another member, A.D., applied with his wife for FOID cards in November 2020, but had not heard from ISP as of June 25, 2021. *Id.* Sigale also states that he knows of a fifty-four-year-old Cook County resident who applied for a FOID card in February 2021 and awaits a determination; that individual belongs to both ISRA and SAF. *Id.* ¶ 5. Based upon Sigale's representations, this Court finds that both ISRA and SAF have demonstrated that at least one of their members possesses a concrete and particularized injury that they have suffered as a result of Defendants' processing delays, and this Court could redress that injury by a favorable decision. *Woodring*, 986 F.3d at 984.

Second, ISRA and SAF have established that the interests they seek to protect in this lawsuit are germane to their organizational interests. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020). Their organizational purposes of "securing the constitutional right to privately own and possess firearms within Illinois" and to pursue "legal action focusing on the constitutional right privately to own and possess firearms" plainly align with the focus of this litigation—to ensure that their members timely receive their FOID cards entitling them the right to possess firearms in Illinois. [40] ¶¶ 15, 19.

Third, ISRA and SAF's claims require no participation of their members. They bring constitutional claims and seek injunctive and declaratory relief, and neither the claims nor requests for relief require proof of individual damages or otherwise demand participation of their members. *See Shakman*, 994 F.3d at 841; *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 603 (7th Cir. 1993) ("Declaratory, injunctive, or other prospective relief will usually inure to the benefit of the members actually injured and thus individualized proof of damages is often unnecessary.").

This Court's finding on associational standing remains consistent with its finding in the preliminary injunction opinion. [87]. Defendants request that this Court "reconsider" its ruling on associational standing because Plaintiffs' assertions on the standing of their individual members "are too tenuous." [108] at 4. If Defendants mean that Plaintiffs have not named members, this Court rejects that

argument once again. The Seventh Circuit has declined to impose a requirement for organizations to name members for the purposes of establishing associational standing. Indeed, "the requirement for an individual member to have standing 'still allows for the member on whose behalf the suit is filed to remain unnamed by the organization.'" *Prairie Rivers Network*, 2 F.4th at 1011 (quoting *Disability Rts. Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008)). This Court similarly rejects Defendants' argument that this lawsuit is not germane to Plaintiffs' organizational interests because it seeks only to redress ISP's delays in process, not ISP's actual determinations of FOID card eligibility. *Contra* [108] at 4. The delays in process prevent eligible applicants from timely receiving their FOID cards, therein preventing them from legally possessing firearms while they await their applications. The claims here seek to prevent further delays to members' ability to legally possess firearms, and thus, clearly are germane to ISRA and SAF's organizational interests.

With Article III standing secure, this Court turns to the merits of Plaintiffs' constitutional claims.

### 2.   Count I: Second Amendment Claim[2]

This crux of Plaintiffs' claim is that Defendants' delays in issuing FOID cards violates the Second Amendment.

---

[2] Plaintiffs have titled Count I "Violation of right to keep and bear arms U.S. Const. Amends. II and XIV." The Second Amendment's relevance is obvious; the Fourteenth Amendment incorporates the Second Amendment against the States. *Ezell v. City of Chicago*, 651 F.3d 684, 689 (7th Cir. 2011).

The Constitution's Second Amendment states that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment guarantees both the "right of law-abiding, responsible citizens to use arms in defense of hearth and home" as well as the right to bear arms "outside the home." *White*, 15 F.4th at 811 (first quoting *District of Columbia v. Heller*, 554 U.S. 570 (2008); then quoting *Moore v. Madigan*, 702 F.3d 933, 941–42 (7th Cir. 2012)).

The Seventh Circuit has supplied a two-step framework to analyzing Second Amendment claims: first, the court asks if the restricted activity falls within the Second Amendment's scope; and if so, the court proceeds to means-end scrutiny, which requires the court "to evaluate the regulatory means the government has chosen and the public-benefits ends it seeks to achieve." *Id.* (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011) (*Ezell I*)). Although technically a two-step inquiry, courts "usually defer the threshold historical scope inquiry" at step one and "proceed directly to means-end scrutiny" at step two. *Kanter v. Barr*, 919 F.3d 437, 447 n.9 (7th Cir. 2019); *see also White*, 15 F.4th at 811 ("As is our usual practice, we will assume without deciding that the Second Amendment applies . . . and proceed directly to means-end scrutiny."). Consistent with the normal practice, this Court will assume that Plaintiffs have brought a claim that falls within the scope of the Second Amendment and proceed to step two—the means-end scrutiny.

As they did at the preliminary injunction stage, the parties dispute the appropriate level of scrutiny that this Court should apply to Plaintiffs' claims at step

two. Defendants ask this Court to adhere to the intermediate scrutiny analysis it applied in the preliminary injunction opinion, *see* [108] at 6, while Plaintiffs urge this Court to reconsider that decision and instead apply a more heightened form of scrutiny, *see* [106] at 20–22. On this issue, the Seventh Circuit has instructed that the "rigor of this judicial review" depends upon "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Ezell I*, 651 F.3d at 703. This means that "[s]evere burdens on the core right of armed defense require a very strong public-interest justification and a close means-end fit," while "lesser burdens, and burdens on activity lying closer to the margins of the right, are more easily justified." *Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017) (*Ezell II*).

In advocating for a more heightened form of scrutiny, Plaintiffs cite *Ezell I*, where the Seventh Circuit observed that broadly prohibitory laws—such as bans on handgun possession at home—are categorically unconstitutional. Plaintiffs argue that so-called "delays" in processing FOID applications amount to outright bans because applicants cannot lawfully possess firearms while they await ISP's decision. [106] at 21 (citing *Ezell I*, 651 F.3d at 703). Yet Plaintiffs have not alleged an outright ban on gun ownership or even an indefinite "delay" in processing their FOID card applications; rather, they have alleged periods of time between when an eligible person applies for a FOID card and the time he or she receives the card. As this Court noted at the preliminary injunction stage, the alleged "delays" fall short of "broadly and permanently restricting a core Second Amendment right," as the ISP's process

merely postpones a gun owner's exercise of that right. [87] at 18–19. The Court again rejects the argument that the ISP's delays amount to outright bans on firearm ownership that are *per se* unconstitutional.

Nor do the facts alleged in this case require application of strict scrutiny review. The Seventh Circuit has only applied that standard to tight restrictions on Second Amendment rights. In *Ezell I*, for instance, the court of appeals applied "a more rigorous showing . . . if not quite 'strict scrutiny'" to its evaluation of a Chicago ordinance requiring firing range training for gun ownership and prohibiting firing ranges throughout the City. 651 F.3d at 684. The court applied the heightened scrutiny because the City's ordinance outright prohibited "law-abiding, responsible citizens" of Chicago "from engaging in target practice" in a firing range in the City; this, in turn, resulted in a "serious encroachment" on the right to "maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Id.* at 708. Likewise, in *Moore v. Madigan*, the Seventh Circuit applied heightened scrutiny to a prohibition against carrying a gun in public, reasoning that the law resulted in a substantial curtailment of the right of armed self-defense. 702 F.3d 933, 940 (7th Cir. 2012). These cases convince this Court that the law demands something approaching strict scrutiny only where the challenged law or action strongly implicates a core Second Amendment right *and* severely burdens that right. *Accord Duncan v. Bonta*, 19 F.4th 1087, 1103 (9th Cir. 2021) ("Strict scrutiny applies only to laws that both implicate a core Second Amendment right and place a substantial burden on that right.") (quotation omitted);

*Kolbe v. Hogan*, 849 F.3d 114, 138 (4th Cir. 2017) (noting that "intermediate scrutiny is the appropriate standard because [the statute] does not severely burden the core protection of the Second Amendment, i.e., the right of law-abiding, responsible citizens to use arms for self-defense in the home"). *Cf. Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 538 n.12 (S.D.N.Y. 2018) (observing that the "Second Circuit has not yet applied [strict scrutiny] to any statute in the Second Amendment context, even when faced with statutes banning possession of entire categories of weapons").

That the ISP requires more than the thirty (30) days allowed by state statute to process FOID applications is not an outright prohibition of fundamental Second Amendment rights as were present in *Moore* and *Ezell*. Plaintiffs do not allege a flat ban; they allege the ISP takes too long to provide some qualified individuals a license to possess a firearm. For instance, the amended complaint alleges that "residents commonly wait[ ] as long as 60 to 90 days to receive a FOID card." [40] ¶ 4. The amended complaint recites the experience of a number of individuals who had been waiting between five (5) to nine (9) months for their FOID applications to be processed at the time the amended complaint was filed in November of 2020. *Id.* ¶¶ 39–42.

The Defendants argue that the delays pass intermediate scrutiny because the FOID regulations are substantially related to important government interests. *Cf. Ezell I*, 651 F.3d at 701 (noting that courts must apply some heightened standard of scrutiny to Second Amendment claims; rational-basis review is inappropriate). The Defendants invite the Court to conduct the intermediate scrutiny analysis at this stage of the proceeding. Defendants may be correct about the constitutional question.

But the issue before the Court today is whether the Plaintiffs have stated a plausible claim under Rule 12(b)(6). At this point the Court determines the Plaintiffs have stated a plausible Second Amendment claim.[3]

### 3. Count II: Fourteenth Amendment Claim

The Fourteenth Amendment prohibits any State from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

Initially, although Plaintiffs have framed this claim as alleging violations of "procedural due process," *see* [40] at Count II, their allegations also suggest a substantive due process theory. Substantive due process protects individuals from government intrusions upon "a fundamental right or liberty," *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019), and Plaintiffs assert in Count II that Defendants have deprived Plaintiffs' members of their "fundamental constitutional right" to bear arms, [40] ¶¶ 66–67; *see also* [106] at 28 (arguing that "Defendants' delays completely and indefinitely deprive individuals of their Second Amendment rights"). Although Plaintiffs bring this theory of relief under the due process framework, it is another attempt to state a Second Amendment claim based upon a State's constraint of Plaintiffs' right to bear arms. Where another provision of the Constitution "provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293

---

[3] Plaintiffs contend Defendants must prove that the FOID process actually prevents dangerous people from obtaining firearms. [106] at 23. It is premature to make this determination, but the *Moore* court opined that "Empirical evidence of a public safety concern can be dispensed with altogether when the ban is limited to obviously dangerous persons such as felons and the mentally ill." 702 F.3d at 940.

(1999) (internal quotation marks omitted). The alleged deprivation of Plaintiffs' right to possess and use firearms due to Defendants' processing delays clearly implicates the rights conferred by the Second Amendment, and thus, this Court dismisses Plaintiffs' substantive due process theory as duplicative of their Second Amendment claim. *See, e.g.*, *Second Amend. Arms v. City of Chicago*, 135 F. Supp. 3d 743, 763 (N.D. Ill. 2015) (analyzing the plaintiff's claims that an ordinance impaired his fundamental right to sell firearms through retail sales, and to display those firearms and ammunition for sale, under the First and Second Amendments, rather than under the due process clause of the Fourteenth Amendment); *see also, e.g.*, *Johnson v. Lyon*, 406 F. Supp. 3d 651, 671 (W.D. Mich. 2018) (holding that despite the plaintiff's attempts to bring a due process claim, allegations that the State violated the plaintiff's right to armed self-defense must be assessed under the Second Amendment, not the Fourteenth Amendment); *Clark v. City of Shawnee*, 228 F. Supp. 3d 1210, 1223 (D. Kan. 2017) (rejecting the plaintiff's due process claim that a city's firearm licensing process burdened him because the claim was "no more than an indirect and duplicative Second Amendment challenge").

Plaintiffs' Fourteenth Amendment claim is also deficient if considered under the procedural due process framework because the due process clause does not, as Plaintiffs argue, compel the government to adjudicate FOID card applications "within a specific and brief time." [106] at 25. Plaintiffs rely on the fact that in the First Amendment context, legislatures must ensure the existence of certain procedural safeguards before imposing a prior restraint—such as the requirement to obtain a

license—on the freedom of expression; those safeguards include requiring a licensor to make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (citing *Freedman v. State of Maryland*, 380 U.S. 51, 58 (1965)).

But this is a Second Amendment case for which First Amendment jurisprudence serves as a poor fit. Although this Court explained as much in its preliminary injunction opinion, *see* [87] at 24–25, Plaintiffs urge this Court to reconsider that ruling, arguing that courts have historically analogized to the First Amendment in cases presenting Second Amendment issues. [106] at 25–27. To reiterate: Plaintiffs are only halfway right. True, as Plaintiffs observe, courts extrapolate First Amendment principles to the Second Amendment context; the *Ezell I* court drew on the First Amendment's well-established means-end scrutiny to fashion an appropriate means-end scrutiny framework for Second Amendment claims. *Ezell I*, 651 F.3d at 708. Yet there exists no precedent for importing First Amendment prior restraint principles into the Second Amendment context. To the contrary, courts note that the "prior restraint doctrine embraces concepts unique to the First Amendment; the primary focus of the doctrine is preventing censorship and limiting the chilling effect of prior restraints on protected speech" that are not present in the context of the Second Amendment. *Bolton v. Bryant*, 71 F. Supp. 3d 802, 817 (N.D. Ill. 2014); *accord Drake v. Filko*, 724 F.3d 426, 435 (3d Cir. 2013) (determining that "it would not be appropriate to import First Amendment prior restraint doctrine"

to the court's analysis of appellants' Second Amendment challenge); *Kachalsky v. County of Westchester*, 701 F.3d 81, 91 (2d Cir. 2012) (declining to apply prior-restraint First Amendment principles to Second Amendment claim because there exist "salient differences between the state's ability to regulate each of these rights"). The prior restraint cases do not apply here, and Plaintiffs fail to plausibly allege a due process claim based upon the length of time it takes Defendants to adjudicate FOID card applications.

In addition, this Court notes that the crux of Plaintiffs' due process claim lies in the notion that Defendants have failed to follow the FOID Card Act's mandate that the ISP adjudicate applications within thirty days. To be sure, these allegations suggest that Defendants have possibly violated a state statute. But it is well-established that a "failure to follow state statutes or state-mandated procedures does not amount to a federal due process claim of constitutional magnitude." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016).

For these reasons, this Court finds that Plaintiffs have failed to state a cognizable due process claim.

### B. The Intervenors' Claims

As this Court previously discussed [81], the Eleventh Amendment bars Intervenors' requests for money damages against state officials in their official capacity. Thus, Intervenors' renewed claim for emotional distress and other monetary

damages against the Defendants in their official capacity is dismissed with prejudice. [91] ¶ 10.

The Intervenors' amended complaint also names Kelly and Trame in their individual capacities. *Id.* ¶ 16. To state a § 1983 claim based on individual liability, a plaintiff must assert "*direct* liability." *Taylor v. Ways*, 999 F.3d 478, 494 n.7 (7th Cir. 2021). To recover damages against an official in a supervisory role, "a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, *through his or her own conduct*, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (emphasis added). To that end, some "causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery" under an individual liability theory. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

In their original complaint, Intervenors made no allegations about Defendants' individual conduct in causing their alleged constitutional deprivations. *See* [37]. For this reason, this Court dismissed any claim against Defendants based upon an individual capacity theory. [81] at 5. Attempting to cure their pleading deficiencies, Intervenors in their amended complaint allege that Defendants "acted as individuals either to (i) expressly direct ISP employees to neglect FOICA state policy, or (ii) knowingly fail to direct ISP employees to comply with FOICA state policy." [91] ¶ 16.

These allegations do not suffice to state a claim based upon individual liability. For supervisors like Kelly and Trame "to be found liable in their individual capacity under § 1983, they 'must know about the [unconstitutional] conduct and facilitate it,

20

approve it, condone it, or turn a blind eye for fear of what they might see.'" *Barnett v. City of Chicago*, No. 18 C 7946, 2020 WL 4336063, at *5 (N.D. Ill. July 28, 2020) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Taylor*, 999 F.3d at 494. It "is not sufficient for a section 1983 plaintiff to show that a supervisory official was remiss in supervising the implementation of policy in force in an institution." *Rascon v. Hardiman*, 803 F.2d 269, 273–74 (7th Cir. 1986). Rather, Intervenors must allege that Defendants "knew about or was personally involved in the specific conduct" at issue—here, the delay in processing *Intervenors'* FOID card applications. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *see also, e.g.*, *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997) ("Chief Robertson can only be held liable if he knew Sergeant Krane was using excessive force on Lanigan or if he was deliberately indifferent to Sergeant Krane's actions *and* if Chief Robertson had a realistic opportunity to intervene to prevent the use of excessive force."); *Washington v. Bd. of Educ. for City of Chicago*, No. 21 C 396, 2021 WL 5881682, at *7 (N.D. Ill. Dec. 8, 2021) (holding that the plaintiff failed to allege an individual capacity theory based upon equal protection violations against a supervisory official because the plaintiff did "not specifically allege that she had any participation in or knowledge of the decision to remove Washington, let alone that she directed or consented to the decision"); *McFall v. Neal*, No. 3:21-CV-534-DRL-MGG, 2022 WL 36097, at *1 (N.D. Ind. Jan. 4, 2022) ("Here, although Mr. McFall alleges the warden's purported policy to use Narcan as needed contributed to its use

on him, that allegation does not allow a reasonable inference that the warden was aware of or involved in *this specific incident*.") (emphasis added).

The Intervenors' allegations fall short of stating a plausible theory of individual liability against Defendants. Intervenors allege, in conclusory terms, that Defendants "acted as individuals either to (i) expressly direct ISP employees to neglect FOICA state policy, or (ii) knowingly fail to direct ISP employees to comply with FOICA state policy." [91] ¶ 16. But allegations that Defendants were "remiss in supervising the implementation of policy" fail to state a viable section 1983 claim under an individual liability theory. *Rascon*, 803 F.2d at 273–74; *see also, e.g.*, *Cole v. Godinez*, No. 14-CV-01317-JPG, 2015 WL 3400181, at *3 (S.D. Ill. May 26, 2015) ("Plaintiff's bald assertion that Director Godinez was responsible for the policies, customs, or practices that increased Plaintiff's risk of assault fails to satisfy basic pleading standards."). Without more allegations of Defendants' personal involvement in causing the delays to Intervenors' applications, Intervenors' individual capacity claim remains only speculative, not plausible.

Finally, this Court notes that Intervenors' purport to allege a § 1983 claim based only upon Defendants' failures to adhere to "state policy"—that is, the statutory time limit for ISP to issue FOID cards. [91] ¶ 16. The "mere fact that state rules or statutes are violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim." *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004), *as amended* (June 4, 2004); *see also Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (noting that § 1983 protects plaintiffs from

constitutional violations, not violations of state laws); *see also, e.g.*, *Nordstrom v. Dean*, No. CV157607DMGFFMX, 2016 WL 10933077, at *9 (C.D. Cal. Jan. 8, 2016) (claim that the sheriff failed to adhere to state-mandated time limits in issuing a concealed carry weapon permit failed to state a cognizable § 1983 claim because "Section 1983 applies only to the violation of federal constitutional or statutory rights," so "[v]iolation of a state statutory time limit for issuing a permit may not be challenged under section 1983"), *aff'd*, 700 F. App'x 764 (9th Cir. 2017).

This Intervenors have again failed to state a plausible Second Amendment claim. Accordingly, this Court dismisses their amended complaint in intervention.

## IV.  Conclusion

For the reasons explained above, this Court grants in part and denies in part Defendants' motion to dismiss Plaintiff's claims [94], and grants Defendants' motion to dismiss Intervenors' claims [98]. This Court dismisses Count II of the amended complaint [40] and the amended complaint in intervention [91]. Defendants are directed to answer Count I of the Amended Complaint [40] by February 21, 2022.

E N T E R :

Dated: January 26, 2022

_____
MARY M. ROWLAND
United States District Judge